UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| GREGORY HOHMANN and<br>    PATRICIA HOHMANN,<br><br>           Plaintiffs,<br>  v.<br><br>GTECH CORP., GTECH PRINTING<br>    CORP. and WILLIAM MILLER,<br><br>           Defendants. | 3:09-cv-1434 (CSH) |

**RULING ON MOTION TO DISMISS**

HAIGHT, Senior District Judge:

Plaintiffs Gregory Hohmann and Patricia Hohmann seek damages from defendants GTECH Corporation, GTECH Printing Corporation (collectively "GTECH"), and William Miller based on two statements made by Miller in connection with a fraud investigation conducted by the Connecticut Lottery Corporation (CLC) and the Connecticut Division of Special Revenue (DSR). Defendants have filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) (the "Motion") [Doc. 13] arguing that each of the eight counts in Plaintiffs' Complaint [Doc. 1-2 pp. 4-24] is defective. In response, Plaintiffs state that they do not object to dismissal of Counts Four and Eight, but object to dismissal of the other six counts. Memorandum in Support of Objection to Motion to Dismiss ("Pl. Memo.") [Doc. 21-2].

**I.     Background**

This action arises from a lottery ticket (the "Ticket") issued by the CLC. The Ticket included two "dice." If the total number of dots on the "dice" equaled seven, the buyer would win $1 million.

1

The Ticket, however, has brought Plaintiffs not a fortune but, by their own account, the loss of their license to sell such tickets, loss of profits, public humiliation, and distress.

The following facts are taken from Plaintiffs' Complaint and from the findings in the administrative decision in this matter, of which the Court takes judicial notice. Notice of Decision, *In the Matter of Gary Brown, et al.*, No. L-07-10 (Div. of Special Revenue April 26, 2007) (the "Decision").[1] In January 2007, plaintiff Gregory Hohmann operated a business named Founders Plaza Service Station, Inc. ("Founders Plaza"), which held a license to sell lottery tickets issued by the CLC. Defendant Miller, who has been employed in the lottery printing industry since 1983, was the Vice President of Manufacturing for GTECH, which manufactured lottery tickets for the CLC, including the Ticket.

On January 7, 2007, Gregory Hohmann purchased the Ticket from Founders Plaza. Two days later, Patricia Hohmann presented the Ticket to a CLC claim center and filled out a claim form. Both Plaintiffs had signed the back of the Ticket. The Ticket was scanned at the center, and Patricia Hohmann was told that it was not a winner. The scratched Ticket appeared to show a die with four dots and a die with three dots, but the word "two" appeared under the die with three dots.

The CLC and DSR both conducted investigations of the Ticket. The CLC submitted the Ticket to Miller, asking him to examine it. After examining the Ticket, Miller submitted a letter to the CLC on February 22, 2007 (the "Letter"). In the Letter, Miller stated, *inter alia*, that the Ticket had been altered after it was scratched off.

The DSR sought to revoke Founders Plaza's lottery ticket license, and a hearing was held in

---

[1] A copy of the Decision is attached to Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Memo.") [Doc. 14] as Exhibit B.

the matter by a DSR hearing officer, Anne Stiber (the "Officer") on March 14, 2007. Based on testimony and evidence offered at the hearing, the Officer recommended that the license be revoked. The Officer found that "there is no question that this is an altered ticket." Decision at 14. "[I]t is clear to the naked eye the dots do not properly align in the play area in question." *Id.* She accepted Miller's statement that the Ticket had been altered by adding a dot to one of the "dice" after the Ticket was scratched off. She further found that Plaintiffs had presented the Ticket for a claim. *Id.* at 14-15.

Defendants further assert, and Plaintiffs do not deny, that the Decision was appealed to the Gaming Policy Board (the "Board"), which affirmed the Decision on September 24, 2007. Def. Memo. at 7. Plaintiffs appealed that decision to the Connecticut Superior Court. On February 23, 2009, Plaintiffs withdrew the appeal. *Id.* at 7-8. Thereafter, Plaintiffs filed this action.

Counts Four and Eight, now effectively withdrawn, alleged fraud against Miller and GTECH. In the remaining counts, Plaintiffs plead negligence (Counts One and Five), recklessness (Counts Two and Six) and defamation (Count Three and Seven) against Miller and GTECH.

## II.   Discussion

### A.   Standard for Motion to Dismiss

In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In deciding a Rule 12(b)(6) motion, the court accepts the allegations contained in the complaint as true and draws all reasonable inferences in favor of the nonmoving party, unless the allegations are supported by mere conclusory statements. *Hayden v. Paterson*, 594 F.3d 150, 157 n. 4 (2d Cir. 2010). In addition to the allegations of the complaint, the Court may also consider

matters of which judicial notice may be taken.  *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Co.*, 697 F.3d 59, 64 n. 4 (2d Cir. 2012).  The matters of which a court may take judicial notice include the decisions of an administrative agency.  *Golden Hll Paugussett Tribe of Indians v. Rell*, 463 F.Supp.2d 192, 197 (D. Conn. 2006).

      **B.**      **Defamation Claims: Qualified Privilege/Failure to Allege Malice**

In Counts Three and Seven, Plaintiffs bring defamation counts against Miller and GTECH.  They allege that both Defendants defamed them by publishing the Letter "indicating the Hohmann ticket was a 'fraud' which is a crime of moral turpitude."  Complaint, Count Three ¶ 24, Count Seven ¶ 24.

Defendants argue that these claims are deficient because any statements in the Letter were "conditionally privileged" and therefore actionable only if made with "actual malice."  Def. Memo. at 9.  Plaintiffs respond that it is too early in the case to determine whether Miller enjoyed a conditional privilege or if it had been abused.  Pl. Memo. at 1-2.  Defendants' Answer and discovery will, they say, "ultimately flesh out what type of investigation was being pursued; by what entity it was being pursued; and toward what end."  *Id.* at 2.

Under Connecticut defamation law, statements made in connection with judicial proceedings are entitled to either absolute or qualified privilege.  *Gallo v. Barile*, 284 Conn. 459, 465-68 (2007).  The privilege extends to police investigations.  "The scope of privileged communication extends not merely to those made directly to a tribunal, but also to those preparatory communications that may be directed to the goal of the proceeding."  *Hopkins v. O'Connor*, 282 Conn. 821, 832 (2007).  "Our Supreme Court has held that statements made to the police in connection with a criminal investigation, such as the defendant's statements in the present case, are entitled to protection by a

qualified privilege." *Mara v. Otto*, 127 Conn. App. 404, 409 (2011).

The Connecticut appellate courts have not ruled directly on the issue of what privilege applies to statements made to officials other than the police. However, the Connecticut Supreme Court's reasoning in *Gallo v. Barile* makes it clear that at a minimum, qualified privilege applies. In that case, the plaintiff alleged that the defendants had defamed him in statements made to a state trooper investigating the plaintiff's allegedly threatening behavior towards his supervisor. The Court treated the issue as being whether statements made to the police in connection with a criminal investigation are protected by absolute or qualified privilege. *Gallo* at 460. The Court concluded that such statements are entitled to qualified privilege. *Id.* at 468. It did not even consider the possibility that such statements are not entitled to any privilege.

Statements elicited by agencies like the CLC and the DSR may also be privileged. The Connecticut Supreme Court has, for instance, granted absolute privilege to a statement elicited by an administrative agency for use at a hearing. *Petyan v. Ellis*, 200 Conn. 243, 251 (1986). In administrative investigations as in police investigations, some degree of privilege serves the public policy behind such privileges. "The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements." *Gallo* at 466.

Clearly, the Supreme Court's holding in *Gallo* establishes that qualified (if not absolute) privilege applies to statements elicited by the CLC and DSR in the course of their investigations. As long as the statements are relevant to the investigation, "[p]articipants in a judicial process must be able to testify or otherwise take part without being hampered by fear of defamation suits." *Hopkins v. O'Connor*, 282 Conn. 821, 838-39 (2007).

5

In this case, the allegations of the Complaint themselves establish the existence of a qualified privilege. Plaintiffs' assertion that discovery is necessary to determine what type of investigation was being pursued, by what entity, and towards what end, and what the nature of Miller's participation was, Pl. Memo. at 1-2, fails to recognize that the Complaint itself makes allegations on every one of those points.

In support of the defamation claims, Plaintiffs allege only one act: Miller's submission of the Letter to the CLC.[2] The allegations of the Complaint establish that the Letter was elicited by the CLC as part of its investigation of the Ticket:

> 17. As part of Connecticut Lottery Corporation and/or Division of Special Revenue's investigation, information and an opinion regarding the subject lottery ticket was sought from the ticket's manufacturer and distributor, GTECH Printing Corporation and or its parent company, GTECH Corporation through its representative William Miller.
> 18. On February 22, 2007, the defendant, William Miller, Vice President of Manufacturing for GTECH submitted a letter to the Connecticut Lottery Corporation in which he stated that the ticket had been altered after it was "scratched off", and that he was certain that the ticket was a "forgery."

Complaint, Count One ¶¶ 17-18. From this alone it is clear that Plaintiffs allege that Miller's statement was elicited by the CLC or DSR in the course of an investigation. And the Complaint continues to drive that point home:

> 19. On the date the defendant, William Miller, rendered his opinion he was aware that Department of Revenue Services and/or Connecticut Lottery Corporation were conducting an investigation related to the ticket and the individuals who had signed the ticket (the plaintiffs).
> 20. The defendant, William Miller, knew or should have known that his February 22, 2007 letter would be used by Connecticut authorities in the investigation of the Plaintiffs or individuals like the Plaintiffs.

---

[2] Plaintiffs allege that Miller and GTECH defamed them by "publishing" the Letter. Complaint, Count Three ¶ 24, Count Seven ¶ 24. No "publication" of the Letter is alleged other than Miller's submission of it to the CLC.

6

Complaint, Count One ¶¶ 19-20.  Thus, the allegations of the Complaint establish that the statement at issue is covered by qualified privilege.

When a statement is covered by qualified privilege, the plaintiff can prevail only by showing that the statement was made with "malice in fact or actual malice."  *Gallo* at 464 n. 6, quoting *Hopkins* at 845.  "Actual malice requires that the statement, when made, be made with actual knowledge that it was false or reckless disregard of whether it was false."  *Id.*, quoting *Hopkins* at 846-47.  "Malice in fact is sufficiently shown by proof that the [statement was] made with improper and unjustifiable motives."  *Id.* (punctuation in original).

Reckless disregard for the truth of a false statement "may be found when an individual publishes defamatory statements 'with a high degree of awareness of ... probable falsity ... or ... entertained serious doubts as to the truth of [the] publication.'"  *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 639 (2009), quoting *Woodcock v. Journal Publishing Co.*, 230 Conn. 525, 540 (1994) (punctuation in original).  A negligent misstatement of fact will not suffice; the evidence must demonstrate a purposeful avoidance of the truth.  *Id.* at 637.

The Complaint does not allege that Miller knew the statement was false, or that he made the statement with reckless disregard of whether it was false.  Although it does allege recklessness, it alleges a different kind of recklessness: Miller's conduct "represented action taken in disregard of the reasonably anticipated consequence of such actions."  Complaint, Count Two ¶ 25.  In other words, Miller's conduct was allegedly reckless towards the consequences of the statements made in the Letter, not towards the truth of those statements.

Plaintiffs allege that Miller "knew or should have known that he could not be 'certain' that the ticket was a 'fraud' and/or that his letter widely diverged from the truth."  *Id.*, Count One ¶ 25.

That assertion, however, does not really allege that Miller acted with reckless disregard of whether his statements in the Letter were false. To say that a speaker "should have known" something (the traditional standard for negligence rather than recklessness) is quite different from saying that he had a high degree of awareness of his statement's probable falsity, entertained serious doubts as to its truth, or purposefully avoided the truth. To say Miller "should have known" that his statements "widely diverged from the truth" is to state that Miller engaged in a negligent misstatement of fact, which is not enough to constitute reckless disregard. *Gambardella v. Apple Health Care, Inc.*, 291 Conn. 620, 637 (2009).

The Complaint also fails to allege that Miller acted with "improper and unjustifiable motives." It does engage in some speculation about Miller's motives, but without alleging that Miller was in fact actuated by any such motives:

> 23. Whether to not upset the business relation between his employer and the Connecticut Lottery Corporation; or to not implicate defective manufacturing and printing of the ticket by his employer; or to enhance his own reputation and prestige; *or for some other reason* Miller held himself out as an expert (when he was not so qualified) and declared that the Hohmann ticket was a "fraud."

Complaint, Count Two ¶ 23 (emphasis added). Speculation is not allegation.

Plaintiffs neither specifically allege that Miller spoke with actual malice or malice in fact, nor allege any facts which, if true, would support such a charge. Consequently, Plaintiffs' defamation claims must be dismissed.

## C. Defamation Claims: Failure to Allege Falsity[3]

Defendants also argue that the defamation claims must be dismissed because they do not allege the falsity element of defamation. Def. Memo. at 14-16. "To prevail on a common-law defamation claim, a plaintiff must prove that the defendant published false statements about her that caused pecuniary harm." *Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 795 (1999). To survive a motion to dismiss, the complaint must allege all of the requisite elements of the cause of action. *Lyddy v. Bridgeport Bd. of Educ.*, No. 3:06CV1420, 2008 WL2397688, at *2 (D.Conn. June 18, 2008); *Stancuna v. Schaffer*, 122 Conn. App. 484, 489 (2010).

Plaintiffs' Complaint does not allege that Miller (or by extension GTECH) made a false statement. The statements attributed to Miller are "that the ticket had been altered after it was 'scratched off', and that he was certain that the ticket was a 'forgery.'" Complaint, Count One ¶ 18. The Complaint nowhere alleges that either of these statements was false. Plaintiffs stated in their memorandum that they intend to amend the Complaint to add Count One ¶ 25 to their defamation counts for this purpose. Pl. Memo. at 4-5. They have not done so, but in any event Count One ¶ 25 does not allege that either of the statements is false. It alleges that Miller "knew or should have known that he could not be 'certain' that the ticket was a 'fraud' and/or that his letter widely diverged from the truth." It does not allege either (1) that the Ticket was *not* altered after it was scratched off, or (2) that the Ticket was *not* a forgery. To say that Miller could not be certain that the Ticket was a fraud is not the same thing as saying that the ticket was not in fact a fraud.

---

[3] Although the Court's holding on the qualified privilege issue is sufficient to warrant dismissal of the defamation claims, the Court addresses the falsity issue as well, to provide a decision on this issue in case the Court's decision on the qualified privilege issue is reversed on appeal.

This failure to allege falsity is not a mere formality. From inspection of the Complaint and Plaintiffs' memorandum, it appears that Plaintiffs are trying to allege these causes of action while carefully avoiding alleging either that the Ticket was not altered or that the Ticket was not a forgery. In order to accomplish this, they allege in effect that Miller should not have made the statements, whether they were true or false. They do so through various assertions: that Miller should not have claimed to be an expert; that Miller should have known that his statements would have bad consequences for Plaintiffs; and that Miller should not have been so certain about his conclusions. Complaint, Count One ¶¶ 20-22, 25, Count Two ¶¶ 22-24. Plaintiffs appear to seek every possible route around the essential fact that they do not claim that his statements were false. Even if the defamation claims did not fail because they do not allege actual malice, they would still fail because they do not allege falsity.

### D.   Defamation Claims: Preclusion

A re-pleaded version of the defamation claims would be precluded by the Officer's and Board's rulings in the DSR administrative adjudication. "[W]hen a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate' . . . federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986) (internal citation omitted). "[A]n administrative board, acting in a judicial capacity, may render a decision that qualifies as a prior determination for purposes of collateral estoppel." *State v. Barlow*, 30 Conn. App. 36, 40 (1993). The decisions of administrative boards have been granted preclusive effect where the board did not employ common-law or statutory rules of evidence, as here. *See, e.g., Sellers v. Sellers Garage, Inc.*, 110 Conn. App. 110, 114-17 (2008)

(decision of workers' compensation commissioner affirmed by workers' compensation review board granted preclusive effect); Conn. Gen. Stat. §§ 31-298, 31-301 (workers' compensation commission and board not bound by rules of evidence).

To allege the malice and falsity elements of defamation, Plaintiffs would have to allege that the statement that the Ticket was altered was false and was made with knowledge or reckless disregard of its falsity. The Officer held a trial-like hearing on the subject of the Ticket's authenticity, of which the Court now takes judicial notice. Plaintiffs were represented by counsel, and had the opportunity to present evidence and cross-examine witnesses. *See* Decision *passim*. Plaintiffs do not assert, in their objection to the present Motion, that the process they were accorded before the Officer was defective. Defendants assert, and Plaintiffs do not deny, that the Board affirmed the Officer's decision, and that Plaintiffs withdrew their appeal of that decision to the Superior Court. Def. Memo. at 7. Plaintiffs do not assert that they lacked an adequate opportunity to litigate the issue. Thus, the Officer's factual findings are entitled to preclusive effect.

The Officer found that Miller's statements about the Ticket were true. She concluded that "it has been clearly established that this dot was not the result of the production process but was a ticket altered by someone." Decision at 14. This establishes both that the Ticket was altered and that it was a forgery. The Court is precluded from reconsidering that issue in this action, rendering re-pleaded defamation claims useless.

Plaintiffs' argument against preclusion misconstrues the issue. Pl. Memo. at 5-6. Plaintiffs assert that the Decision never held that the Hohmanns "had engaged in fraudulent activity." *Id.* at 6. But that is not what is at issue; there is no allegation here that Miller ever stated that the Hohmanns *had* engaged in fraudulent activity. The only statements of Miller's alleged are that the

11

Ticket was altered and that it is a forgery– the statements found to be true in the administrative adjudication. Thus, the defects in the defamation counts cannot be cured by re-pleading.

### E.     Negligence and Recklessness Claims

In addition to bringing defamation claims, Plaintiffs bring claims for "negligence" and "recklessness" against Miller and GTECH (Counts One, Two, Five and Six). These claims are based on the same allegations as the defamation claims, *i.e.*, they rest ultimately on Miller's submission of the Letter.[4]  However, the absence of a duty running from Defendants to Plaintiffs, and the preclusive holding of the DSR that Miller's statements were true, makes it impossible to fix such liability on either him or GTECH.

The existence of a duty is an essential element of a cause of action for either negligence or recklessness. *Jarmie v. Troncale*, 306 Conn. 578, 589 (2012) (negligence); *Vitale v. Kowal*, 101 Conn. App. 691, 698 (2007) (recklessness).  Plaintiffs do not allege in so many words that either Miller or GTECH owed any duty to them. The closest the Complaint comes to such allegations are the statements (1) that Miller "knew or should have known that his February 22, 2007 letter would cause enforcement action against the Plaintiffs or individuals like the Plaintiffs including but not limited to lottery license suspension and arrest," Complaint, Count One § 21, and (2) that GTECH "knew that Connecticut authorities were relying on their agents [sic.] representations and that harm could come to the Plaintiffs or individuals like the Plaintiffs, by negligent representations being

---

[4] In Count Five, Plaintiffs allege that GTECH "manufactured and/or printed and/or distributed the Hohmann lottery ticket with an existing defect . . . ." Complaint, Count Five ¶ 28. However, in a later phrase in the same sentence they state that GTECH "knew or should have known or should have represented that the defect *could have been* their responsibility." (emphasis added).  So it appears that Plaintiffs do not allege the "existing defect" as a fact, but merely as a possibility.

12

made." Complaint, Count Five § 27.

"The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised . . . the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result." *Jarmie* at 590, quoting *Pelletier v. Sordoni/Skanska Cosntr. Co.*, 286 Conn. 563, 593-94 (2008) (punctuation in original). Under Connecticut law, the harm is generally considered foreseeable only if there is an identifiable victim. *Id.* at 596-97. Ruling about the duty of health care providers, the *Jarmie* court noted that "[r]elated areas of Connecticut negligence law [also] provide support for the proposition that proof that the victim was an identifiable target is ordinarily an essential element of an action in negligence." *Id.* at 597, quoting *Mulligan v. Rioux*, 229 Conn. 716, 728 (1994) (punctuation in original). *See also Fraser v. United States*, 236 Conn. 625, 632 (1996) ("[O]ur decisions defining negligence do not impose a duty to those who are not identifiable victims.").

The Complaint alleges that Miller and GTECH should have known that the Letter would be used in an investigation of "the Plaintiffs or individuals like the Plaintiffs." Complaint, Count One §§ 20-21, Count Five §§ 27-28. It does not explain what it means by "individuals like the Plaintiffs." In context, it appears to mean "individuals under investigation by the CLC or DSR in connection with the Ticket." This category, however, does not turn the Hohmanns into "identifiable victims."

This case is similar to *Jarmie*, in which the Connecticut Supreme Court found that the "identifiable victims" element was not alleged. The court confronted a claim that a physician's failure to advise a patient that she should not drive a car constituted negligence towards a person injured when the patient drove negligently. The court found no duty: "[T]he plaintiff was not an

identifiable victim, nor does he belong to an identifiable class of victims, because the potential victims of [the defendant's] alleged negligence included any random pedestrian, driver, vehicular passenger or other person who happened to come in close proximity to a motor vehicle operated by [the patient] following her diagnosis." *Jarmie v. Troncale*, 306 Conn. 578, 639 (2012). The Complaint here likewise does not allege that Miller and GTECH knew, or had a means of discovering, the identity of Plaintiffs before Miller's statements were made.

Even if Plaintiffs alleged that Miller and GTECH knew their identity, Miller could not have had a duty not to answer the CLC's question accurately. The absence of a duty here is underscored by the policy considerations that underlie the duty requirement. Under Connecticut law, the existence of a duty is "an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Jarmie* at 590, quoting *Pelletier v. Sordoni/Skanska Constr. Co.*, 286 Conn. 563, 593-94 (2008). "The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." *Id.*

Here, ascribing a duty to Miller and GTECH would not serve public policy. The only basis for the allegation that any act of Miller's or GTECH's caused harm to Plaintiffs is the two statements in the Letter, which the Court must accept as true, as noted *supra*. Plaintiffs' claim must be that Miller acted negligently or recklessly in providing accurate answers to the CLC's question about whether the Ticket was altered. Even if Plaintiffs allege that Miller should have refused to answer the question because he was not qualified to answer it, they would still be alleging that they were damaged by the provision of information that was, in fact, true. Thus, the duty alleged by these counts is Miller's duty to *fail* to supply the accurate answer to the CLC's inquiry.

It cannot serve public policy to assert that people have a duty to unidentified persons *not* to supply accurate information in response to a government investigation. Plaintiffs present no authority for the existence of such an unusual duty, and this Court thinks it clear that the Connecticut courts would decline to recognize such a duty if the issue arose. Thus, the Complaint does not state causes of action for negligence or recklessness against either Defendant.

### III. Conclusion

Because Plaintiffs have withdrawn Counts Four and Eight while the other counts in the Complaint do not state causes of action, Defendants' Motion to Dismiss [Doc. 13] is GRANTED. The remaining pending motions [Docs. 23, 28, 49] are DENIED as moot. The Clerk is directed to enter judgment for Defendants and close the case.

It is **SO ORDERED.**

Dated: New Haven, Connecticut
December 10, 2012

                                                /s/ *Charles S. Haight, Jr.*
                                                Charles S. Haight, Jr.
                                                Senior United States District Judge